The Honorable Mike Everett State Senator 412 Broadway Marked Tree, AR 72365
Dear Senator Everett:
You have requested an Attorney General opinion concerning the use of state reappraisal funds under Acts 1185 and 1155 of 1999. I am issuing the following opinion in response to your request.
Your questions are:
 (1) If a county reappraises with "in house" procedure, and this procedure was approved by the Assessment Coordination Department, would state funds have to be used as designated in the plan of reappraisal, e.g., for equipment, salaries, etc.?
 (2) If a county's reappraisal plan contains designated expenditures for employees, as mentioned within Act 1155, would the quorum court be bound to those salaries designated within the reappraisal plan, if state funding was being used?
 (3) If ACD's funding directions for a countywide reappraisal designates categories for salaries or equipment, and if the quorum court fails to use the funds as directed by ACD, what happens to the remainder of the funds? Does the County Board of Equalization have the authority to spend the funds in a different manner from that designated by ACD?
RESPONSE
Question 1 — If a county reappraises with "in house" procedure, and thisprocedure was approved by the Assessment Coordination Department, wouldstate funds have to be used as designated in the plan of reappraisal,e.g., for equipment, salaries, etc.?
It is my opinion that although state monies that are distributed to the counties from the Arkansas Real Property Reappraisal Fund do not have to be used as designated in the plan that was originally approved by the Assessment Coordination Department (ACD), these funds must be used for reappraisal costs, and any change in expenditures of these monies must be approved by ACD.
Under Act 1185 of 1999 (codified at A.C.A. § 26-26-1901 et seq.), ACD is given express authority to direct and monitor the use of monies distributed from the Fund, which was created by the Act.
The Act states:
The objectives of this subchapter are as follows:
* * *
 (5) To pay the costs and expenses of reappraisals as determined by the department [ACD] to be necessary, prudent, and reasonable in the implementation of this subchapter; and
 (6) To ensure that all funds expended by the state for reappraisal services are monitored by the department and only that progress and performance of those services as measured by the department to be within the guidelines established by the department are to be compensated by the state.
A.C.A. § 26-26-1904(5) and (6) (emphasis added).
Under A.C.A. § 26-26-1905, each county must submit a reappraisal plan, including expenditure needs, to ACD for approval. After approval of the plan, ACD continues to monitor the reappraisal process to ensure that it is being conducted in accordance with ACD's guidelines and the requirements of state law. See A.C.A. § 26-26-1907. Act 1185 does not indicate that the original expenditure requests cannot be altered. Indeed, the Act does not address the issue of changes to the original reappraisal plan. It is likely that the legislature intentionally declined to include such a limitation, in order that any unforeseen, but necessary, changes that might occur in the reappraisal process could be accommodated. Nevertheless, it is clear that because the Act does expressly grant ACD such direct authority over the reappraisal process, any change in the original plan must be approved by ACD.
As indicated previously, any monies distributed to the counties from the Arkansas Real Property Reappraisal Fund must be used for reappraisal costs and cannot be used for non-reappraisal purposes. This limitation is stated in both Act 1185 and Act 1155 (the relevant appropriation act).
Act 1185 states:
 (a)(1)There is hereby created the "Arkansas Real Property Reappraisal Fund".
 (2) The proceeds of the fund shall be used to pay counties and professional reappraisal companies for the reappraisal of real property required by this subchapter and shall be in lieu of real property reappraisal funding by the local taxing units in each county of this state.
A.C.A. § 26-26-1907(a) [Acts 1999, No. 1185, § 6, as amended by Acts 2001, No. 1553, § 57] (emphasis added).
Similarly, Act 1155 states:
 There is hereby appropriated . . . for paying counties and professional reappraisal companies for the costs of reappraisal of real property. . . .
Acts 1999, No. 1155, § 1 (emphasis added).
It is clear from all of the foregoing statements from Acts 1185 and 1155 concerning the use of monies from the Fund that these monies must be used in connection with the reappraisal, and that the manner in which they are used must be approved by ACD.
Question 2 — If a county's reappraisal plan contains designatedexpenditures for employees, as mentioned within Act 1155, would thequorum court be bound to those salaries designated within the reappraisalplan, if state funding was being used?
See response to Question 1.
Question 3 — If ACD's funding directions for a countywide reappraisaldesignates categories for salaries or equipment, and if the quorum courtfails to use the funds as directed by ACD, what happens to the remainderof the funds? Does the County Board of Equalization have the authority tospend the funds in a different manner from that designated by ACD?
It is my opinion, for the reasons explained in response to Question 1, that in the situation you have described, any funds not expended in the manner originally designated by the county and approved by ACD cannot be diverted to uses unrelated to the reappraisal. As explained in response to Question 1, both Act 1185 and Act 1155 of 1999 make clear that monies distributed from the Arkansas Real Property Reappraisal Fund must be spent in connection with the reappraisal. Act 1185 clearly contemplates that the entire reappraisal process is to remain under the monitoring and direction of ACD. Indeed, ACD is empowered to stop the monthly distribution of funds to counties that are not conducting the reappraisal in the manner approved by ACD. See A.C.A. § 26-26-1907(c)(1).
The County Equalization Board is not authorized to divert any monies from the Fund away from uses related to reappraisal, nor is it authorized to change the manner in which these funds are used in connection with the reappraisal without ACD's approval. As discussed previously, any change in expenditures of Fund monies will be subject to the scrutiny of ACD.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:SA/cyh